In the Matter of the Accounting of HOMER J. BORST, as Executor
of LIZZIE S. FISHER, Deceased, Respondent.
DOROTHY G. FROST as Executrix of J. SHELDON FROST, Appellant.

Argued October 5, 1951; decided December 6, 1951.

*Harold J. O'Keeffe* for appellant. I. If the attorney be guilty of no fraud or undue influence, and if the client, comprehending clearly the circumstances of the situation, be moved only by the impulses of his own will, the transaction, though in the event favorable to the attorney and unfavorable to the client, cannot be impugned. (*Boyd* v. *Daily,* 85 App. Div. 581, 176 N. Y. 613; *Audley* v. *Jester,* 148 App. Div. 94; *Nesbit* v. *Lockman,* 34 N. Y. 167; *Rothschild* v. *Title Guar. & Trust Co.,* 204 N. Y. 458; *Matter of Putnam,* 257 N. Y. 140.) II. A proper interpretation of the instruments clearly shows that decedent had no legal or equitable right to demand the return of said bond and mortgage. (*Pearce* v. *Knepper,* 53 N. Y. S. 2d 845; *Matter of Mayer,* 59 N. Y. S. 2d 558, 561; *Matter of Martin,* 269 N. Y. 305; *Matter of Hoepner,* 176 Misc. 47; *Matter of Cass,* 68 N. Y. S. 2d 666.) III. Decedent was guilty of constructive fraud, if not actual fraud, in making her demand and in getting the reassignment of said bond and mortgage as a result of said demand. (*Ochs* v. *Woods,* 221 N. Y. 335; *Lefler* v. *Field,* 52 N. Y. 621; *Forker* v. *Brown,* 10 Misc. 161; *Clark* v. *Dodge,* 269 N. Y. 410; *Ripin* v. *United States Woven Label Co.,* 205 N. Y. 442; *Rosenblum* v. *Manufacturers Trust Co.,* 270 N. Y. 79; *Matter of Morse,* 98 N. Y. S. 2d 43.)

*James E. O'Loughlin* for respondent. I. Appellant failed to sustain the burden of proving fraud on the part of decedent. (*Daily* v. *Dunn,* 256 App. Div. 1043; *Matter of Howell,* 215 N. Y. 466; *Kissam* v. *Squires,* 102 App. Div. 536; *Feiber* v.

*Copeland,* 232 App. Div. 504; *Frost* v. *Bachman,* 283 N. Y. 744.) II. There was a strong confidential relationship between decedent and J. Sheldon Frost, as well as the further relationship of attorney and client. (*Barnard* v. *Gantz,* 140 N. Y. 249.) III. The bond and mortgage, the basis of the claim, was at all times a trust fund for the benefit of decedent and subject to her benefit and control. (*Matter of Cavin* v. *Gleason,* 105 N. Y. 256; *Matter of Hicks,* 170 N. Y. 195.)

FROESSEL, J. From the stipulated facts, the documents, and the brief testimony constituting the record before us, the following appears: Appellant's testate, J. Sheldon Frost (hereinafter called Frost), and respondent's testate, Lizzie S. Fisher (hereinafter called Mrs. Fisher), were cousins. They were on very cordial terms, and Frost, an attorney at law, managed all of Mrs. Fisher's affairs, performing legal, business and friendly services for her. Although she had a substantial estate, consisting at the time of her death of $147,582.71, Mrs. Fisher lived in a frugal manner for many years; from 1923 to 1933, her expenditures for her own support and maintenance did not exceed $200 a year. On August 22, 1923, she executed an assignment to Frost of a bond and mortgage on a farm in the amount of $2,000. Apparently she did not make delivery of the instrument until April of 1926, and it was recorded on April 19, 1926.

A letter from Frost to another cousin, one Lauder, written on April 12th of that year, throws light upon the assignment: " Lizzie told me that she had two mortgages one of which she had intended for you and one for me and she said she would like to arrange to turn over the mortgages with the understanding that the interest should come to her during her lifetime and that she could call for some of the principal if she needed it for her personal use." Frost drew the agreements accordingly. By his own agreement he obligated himself unequivocally to pay her during the balance of her life $120 per year, irrespective of whether or not he collected anything on the mortgage, " and *in case further moneys are need[ed] by her for her personal use* to pay to her *from time to time* such *part* of the principal sum of said mortgage as she may require " (emphasis supplied).

Frost died on May 12, 1932, over six years after the recording of said assignment. On January 23, 1933, Mrs. Fisher wrote to appellant stating:

" As I have an agreement by which Sheldon agreed to pay me the interest annually upon the Charles R. Rushmore mortgage, I believe that it is inadvisable to call this mortgage in at this time.

" My annual interest is secured by letting the mortgage stand, and I wish it to remain so."

It will be noted that she said nothing about the agreement providing for the return of any principal; she simply did not wish the mortgage called. On May 2, 1933, she made demand in writing upon appellant for the return of the bond and mortgage, concluding as follows: " as I am *in need* of said bond and mortgage and the moneys represented thereby and this demand is made *pursuant to my understanding of the agreement* between myself and J. Sheldon Frost, wherein and whereby *he became possessed* of said bond and mortgage " (emphasis supplied). At this time she was aware that the assets of Frost's estate were insufficient to pay his creditors.

The bond and mortgage were assigned to Mrs. Fisher on May 16, 1933, by appellant, who believed and relied upon the representation that the former was in need of the money. Appellant afterwards discovered that Mrs. Fisher, far from being " in need " at the time of her demand for the reassignment, had savings bank deposits amounting to more than $35,000, later shown to have been actually more than $75,000, and an estate at the time of her death of nearly twice that sum. Indeed, instead of needing the proceeds of this mortgage " for her personal use ", she reassigned the bond and mortgage to Lauder on August 13, 1934.

On June 11, 1936, appellant made demand upon Mrs. Fisher for the return of the bond and mortgage upon the ground of misrepresentation, but Mrs. Fisher never complied therewith during her lifetime; she had already assigned it to her cousin, as noted. She died on May 13, 1940. The claim of appellant against Mrs. Fisher's estate is based upon the fraud allegedly perpetrated on the estate of Frost and its creditors as a result of Mrs. Fisher's demand and the reassignment to her. It is contended that the instrument on its face expressly conditions—

" in case "— the return " from time to time " of *parts* of the principal to Mrs. Fisher upon her " need " of " further moneys " for " her personal use ", and that such need did not exist at the time when appellant reassigned the bond and mortgage to Mrs. Fisher, believing and relying upon the latter's representation that she was in such need.

The referee who heard the evidence in the Surrogate's Court adopted appellant's view of the matter. The Appellate Division took the view that the instrument is " curious ", " vague ", " indefinite " and lacking in completeness, and because of the relationship between the parties and the fact that Frost drafted the agreement, " we may not construe the agreement very strictly against " Mrs Fisher. (275 App. Div. 509, 511, 512.) Since Frost was obligated to pay to Mrs. Fisher such part of the principal " as she may require ", the court concluded that the agreement vested discretion in her to determine when and in what case further moneys might be " needed by her for her personal use " (p. 512).

In the last analysis, the problem before us is reduced to a choice between the opposing constructions given this instrument in the courts below. We are of the opinion that the view adopted by the referee and the Surrogate is by far the sounder. As we look upon the circumstances surrounding the transaction and the conduct of the parties in relation thereto as reflected by the record before us, bearing in mind that both of the parties are dead, it seems to us that it was never intended that Mrs. Fisher would have an absolute right to the return of the security. They were on the best of terms and apparently had the highest regard for each other; no suggestion of any kind appears in the record that either one sought to take the slightest advantage of the other. Thus the language must speak for itself. To us it is an agreement under which Frost could have the mortgage subject to his payment of interest to her during her lifetime and the payment of " further moneys ", not upon her mere request, but only " in case " they " are need[ed] by her for her personal use ". If Frost had never collected a dollar on this mortgage by way of principal or interest, he was nevertheless obligated to pay her at least $120 a year for as long as she lived, and such an agreement is quite different from the situation in *Matter of Woollard* (295 N. Y. 390), cited by the

court below, which dealt with an express trust. There, the will provided for payments of income and corpus to the widow during her lifetime '' as *she* may deem necessary for her maintenance comfort and well being (for which she shall not be required to make or file any account)'' (emphasis supplied). In this case, we have an agreement coupled with an obligation, and it is not Mrs. Fisher's mere demand, but the circumstance of the '' need by her for her personal use '', that is made the condition of payment of '' further moneys '' beyond the interest payments. As it developed, she was never in need; indeed, she never used the bond and mortgage for herself but turned it over intact to another cousin the following year (see *Vincent* v. *Rix,* 248 N. Y. 76, 82).

Accordingly, the order of the Appellate Division should be reversed, and the decree of the Surrogate's Court, insofar as reversed by the Appellate Division, affirmed, with costs to the appellant payable out of the respondent estate.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FULD, JJ., concur.

Ordered accordingly.